May it please the Court, my name is Mario Acosta Jr. and I'm joined here today by Attorney Elsa Martinez and I'm also joined today by the Petitioner, Mr. Forero-Arias. Your Honors, in this case, the Petitioner, Mr. Forero, has been a legal resident of the United States for over 40 years. He was found removable by an immigration judge based on criminal convictions that he had. And he was also denied his applications for relief, which were for withholding removal and relief under the Convention Against Torture. He appealed those decisions to the BIA, who, rather than adopt and affirm the IJ's decision, elected to issue its own decision. So, first and foremost, we would obviously submit that it's only the Board's decision that is subject to review at this time because it never explicitly adopted or affirmed the IJ's decision. On appeal to the BIA, the Board essentially rejected all the arguments offered by Mr. Forero and issued an order of removal again. With the Court's permission, I'd like to begin first with the Board's determination that Mr. Forero had been convicted of an aggravated felony. Is that still at issue in this case, given the Government's position? We believe so, Your Honor. We made an effort to file a motion to remand based on the Government's position and its footnote in the opening brief that the Board's analysis... The language was they would not defend the position. Because it contravenes Ninth Circuit precedent. That's correct, Your Honor. But my understanding is that when this Court reviews the determination by the Board that a conviction qualifies as an aggravated felony, that it's doing so de novo. So with that understanding in mind, I would just like to take the opportunity to just outline what our essential arguments would be. Why? They conceded. It's not an aggravated felony. Grand theft isn't, so they've conceded it. So why do you want to use your time up on that? Ideally, I just wanted to quickly go over the fact that the modified approach was not properly applied. Who cares? Okay, I understand, Your Honor. What relief do you get from it? Well, Your Honor, in this case, the petitioner would be prima facie eligible for cancellation of removal. Did you ask for that before the BIA? I'm sorry, Your Honor? Did you ask for cancellation before either the IJ or the BIA? Well, he was represented by a different attorney with the IJ, and with the IJ, that issue was not brought up. However, to the BIA, it was raised because it was raised in conjunction with the aggravated felony determination because obviously if he's not an aggravated felon, then he would be now eligible for different forms of relief. Most importantly, he'd be eligible for cancellation or removal for legal residence. The requirements for those are just that the person's been lawfully admitted for seven years, that the person has had a legal residence for five years, and that he hasn't been convicted of an aggravated felony. In this case, he would more than meet those requirements considering that he's been a legal resident for over 40 years. Okay. Now, with the Court's permission, moving on then to the second component of our argument. More than permission. It's worth encouragement. I'm sorry, Your Honor. The second argument that we raised was that the Board's determination that Mr. Forero is removable for having committed two crimes of moral fervitude at any time was erroneous and not supported by the record. First and foremost, child review INS, which is a case that we cited too, specifically says that only those convictions that are actually alleged in a notice to appear or in a notice of additional allegations can be used to support a finding that, better yet, be used to support the charge of removability that's lodged. In this case, the government elected to use only two convictions. One was for, I believe, petty theft of credit fraud, which was a violation of Penal Code 484G. In our opening brief, we really don't dispute that it's not a crime of moral fervitude because, unfortunately, the statute actually reads with intent to defraud, and there's more than enough case law that discusses the fact that any crime that involves fraud is a crime of moral fervitude. However, the second argument that the government used was a conviction under Penal Code 666, which, first and foremost, is not even actually a statute of conviction. It's a penalty statute. It's a penalty statute that was actually the subject of a very detailed decision from this court in the decision in U.S. v. Corona Sanchez. In that case, the- You have to look to the underlying offense. I'm sorry? You have to look to the underlying 484A offense. Exactly. But if I may, Your Honor, I just wanted to also raise an additional argument that I noticed. The penalty statute, 666, essentially punishes anyone who's ever been convicted with petty theft with any prior crime. The petty theft conviction, however, that is at issue here, we don't know exactly what was the conduct that led to the petty theft conviction. Petty theft under California Penal Code 484A punishes numerous types of conduct, one of which involves theft of labor. Now- Theft of labor involves fraud, doesn't it? I don't believe so, Your Honor.  There may be such a thing as theft by false pretenses, which may have an element of fraud involved there, Your Honor. However, it would be our position that theft of labor, which is actually- It's a conduct that's punished by the statute, but that unfortunately, at least in my research, I was unable to really find any type of cases that specifically deal with that issue of what exactly constitutes theft of labor other than just what would be the common sense understanding of what that- Let's assume that we agree with you. Then where are we left in the record? Then we're left with looking at applying the modified categorical approach. And what we would submit, Your Honor, is that in this case, the only conviction documents that were submitted by the government were a charging document that essentially just listed the generic elements and generic factual allegations of the offense, and an abstract of judgment. Now, the BIA in this case, first and foremost, concluded that both of these statutes were categorically crimes of maltreatment. And it cites to a decision from this court, which I believe is U.S. v. Esparza Ponce. And in that case, the court held that the crime of moral turpitude- that California Penal Code 44A was categorically a crime of moral turpitude. However, my review of the decision is that that specific argument, the theft of labor, is not necessarily a crime of moral turpitude. It was never raised. And I don't believe that it's ever been actually decided or addressed by any court. Now, I understand that the government cited to Matter of Jurado, which is a recent BIA case. However, I don't believe that there is any dispute regarding the fact that theft in any degree, whether it be petty, whether it be grand, qualifies as a crime of moral turpitude. However, Matter of Jurado does not necessarily deal with the question of whether, theoretically, theft of labor would qualify as a crime of moral turpitude. And there's this other element also to the statute that was recognized in United States v. Esparza- I'm sorry, Your Honor, United States v. Espinoza-Cano, which is that the Penal Code statute also punishes soliciting a false credit report, which it also held was essentially doesn't fall under the purview of what you would traditionally consider a theft offense. So it would be our position that these conviction documents, unless there's some type of factual corroboration, whether it be a plea agreement or a plea transcript, and I would respectfully address the Court's attention to the Court's recent decisions in U.S. v. Vidal, the en banc decision, and in addition to that, the recent decision in Pinulli v. Ashcroft, both of those cases specifically dealt with how you would treat or how you would apply the modified categorical approach when you're faced with a situation that's factually similar to this one, where you have a complaint that just basically lists a bunch of factual allegations, and then you have an abstract of judgment that just recites the same thing, but there is nothing in the record that says, and I believe that U.S. v. Vidal does mention this in the decision, it says, unless there's some corroborating document that's admissible under the modified categorical approach that actually specifically says, well, in our position, I mean, the abstract of judgment says that you're pleading guilty to the offense as it's charged in the information, or plead guilty the factual basis as it's outlined in the probation officer's report, something like that. Then there is no way to know what actual elements or what conduct the person pled guilty to committing. So if the court agrees that Penal Code 484A is divisible to the extent that theft of labor would not qualify as a crime of moral turpitude, then our second argument would be that essentially the modified categorical approach that the BIA really didn't apply in this case because the BIA just concluded that it was categorically a CMT, that it does not support the finding of removability. So if you consider that he's not removable for having committed an aggravated felony and also consider that he's not removable for having committed two crimes of moral turpitude at any time, then there's no basis for the removal order that was issued by the BIA. What does he get if he's not, if they can't rely on those two? I'm sorry, Your Honor? What is the, if he's not convicted of two crimes of moral turpitude, then what does that allow him to do? Well, I believe that at that point the removal order could be vacated because at that point there is no other charge remaining. The only two charges of removability that were lodged against Mr. Forero were the aggravated felony charge, which again the government's already conceded was erroneously found to be an aggravated felony. And in this case, if he's not removable for having committed two crimes of moral turpitude at any time and there's no other convictions at issue, then I believe that pursuant to a chowdhury of the INS, since he wasn't put on notice for any additional charges, the government had ample opportunity, if they wanted to lodge any additional convictions, if they wanted to somehow clarify the record and, you know, add some other convictions on that notice of additional allegations or in the initial notice to appear, could have done so, but he elected not to. And I believe that there's case law that talks about the fact that the government isn't entitled to a second bite at the apple. And I would respectfully direct the Court's attention to Bravo Pedrosa v. Gonzalez, a case that was decided a few months ago that discussed the fact that there is a res judicata element there that would bar the government from trying to use another conviction that was available at the time that the government knew about. Counsel, let me slow you down here a moment. Let's go back and follow up on Judge Paez's question to you. Let's assume aggravated felony is out of the case. Is your client then eligible for cancellation? Yes, Your Honor. Our position would be that if the Board was wrong to find that he was actually an aggravated felon, then at that point what would happen is that, pursuant to another case decided by the Ninth Circuit, Sandoval-Lua, then he would have to establish eligibility for cancellation removal. Now, as I previously mentioned, the government... Let's stop there for a moment. Yes, Your Honor. Then does it go back to the Board? Does it go to the immigration judge? Well, if the Court should agree that both the Board's determination that he was an aggravated felon and the Board's determination that he had... I'm asking you about let's deal only with aggravated felons. Okay. So assuming that the Court finds he was removable for the two CMTs, then I do believe that under Sandoval-Lua it should go back to the Board, and I would direct the Court's attention to the motion to remand that we filed that unfortunately was denied. We did raise the issue that Sandoval-Lua would then have to go back to the Board because there's a different analysis that comes into play when the Board has to determine if someone has shown that they were not convicted of an aggravated felony, and it goes to the whole issue of whether or not the record is inconclusive, and if so, then is the alien now eligible for cancellation or removal, Your Honor? All right. Do you want to cover your convention against torture or are you going to run out of time? Yes, Your Honor. And I just would like to, well, I'd like to reserve the last minute and a half for rebuttal. I'm sorry? Go ahead. Okay. Regarding the convention against torture issue, Your Honor, it's our belief that the Board really doesn't review this issue appropriately. The testimony in the case more than establishes that Mr. Forero was a government informant that worked heavily against the Colombian drug cartels, and there's testimony that discusses... I mean, he had multiple versions of what group he was associated with that would cause a problem. He started off with political concerns, death of the father, and it was brother or cousin. Then it was I served as an informant. I mean, it seems to me it was a moving range of targets, which causes some skepticism. And I understand that, Your Honor, but I do believe that the judge found him credible, so I don't believe that he was necessarily not testifying to the truth. It's just that in his opinion, or better yet, in his counsel's opinion, he believed that there were numerous bases for the withholding and the cap claim. What we feel was really an egregious error here was the finding that he could not establish membership in a particular social group, which we feel then eliminated the possibility of establishing eligibility for withholding or removal. And the Board's reliance on matter of CA, we believe, number one, is an erroneous decision from the Board that in our brief we do ask that the court review because we don't believe that it's appropriate to exclude someone like the petitioner from establishing that he qualifies as a member of a particular social group. And in regards to the cap claim, obviously I understand the court only reviews that for substantial evidence, so it would be our position that a review of the record and a review of the evidence in this case, and especially his involvement from 1988 to almost 2000, almost more than 15 years as a government informant, really does establish that more likely than not, if he goes back to a country that's essentially run almost by these drug cartels, that he will more than likely be tortured or killed once he arrives there. Okay. You can reserve the rest of your time. I have one quick question. Yes, Your Honor. Before I let you go. Yes, Your Honor. You mentioned something about soliciting a fraudulent credit card in relation to the petty theft argument. That's correct, Your Honor. About that? United States v. Espino Sacano is a decision that discussed that specific issue. It was kind of piggybacked from U.S. v. Corona Sanchez. And the determination from the court was that because petty theft under 44A punishes both theft of labor and it could also punish what would be just soliciting a false credit report, that these two types of crimes, because they don't meet the generic definition of theft, would not qualify as theft offenses. Thank you, Your Honor. Thank you. I'll say good afternoon because I'm still on East Coast time. Okay. Your Honors, may it please the Court, my name is Gary Newkirk. I'm counsel for Respondent and Attorney General in this case. And to clarify some of the procedural questions addressed earlier, the aggravated felony charge for removability is off the table. We are not conceding that he's not an aggravated felon for purposes of cancellation of removal if the court or someone else down the line at the agency level determines that he meets a prima facie case for cancellation and proceeds to adjudicate the merits of that application even when that is final. Do you have any disagreement that given that it's off the table that we should remand the BIA to reconsider in light of that? I'm not sure that there's anything that they reconsider. Well, if they would reconsider whether he's now eligible for cancellation of removal. Well, he can apply for cancellation of removal in the form of a motion to reopen. The government's position is that he has waived cancellation. Before the immigration judge, his attorney on the record says, I've been informed of a criminal charge and I'm not going to apply for cancellation. But now the government's conceded that that was an error. That is, that it isn't an aggravated felony. Well, we're not sure that in that portion of the colloquy, we're not sure what charge he's speaking to and I don't think it matters. The bottom line is that cancellation is his burden. And before the immigration judge, there is this crime out there. Well, it seems that somebody made a mistake along the way that he had this aggravated felony. It just seems that it should be remanded to the board for the board to send it back to the IJ so that this guy can apply for cancellation. It seems like the right thing to do. Your Honor, if anybody is at fault, it's me looking at the Shepard documents in this case. To this day, I think he is. We can establish an aggravated felony, but that's beside the point. But he waived cancellation or abandoned that form of relief. Did he raise it before the board? Counsel said that he was raised before the board. That's all for our purposes. That's all that really counts. The issue of cancellation was raised in a footnote, but he didn't apply for cancellation. If he was challenging the sufficiency of the conviction documents before the board, which he did, and he's challenging the aggravated felony basis, then he should have preserved his right. Well, let's assume that he had asked. I don't recall what he said in his appeal to the BIA, but I suppose he had said, it wasn't an aggravated felony. The government failed to establish that Shepard had an aggravated felony conviction. Let's just say the board agreed with that. Wouldn't the board remand back down to the IJ so he could apply for cancellation of removal? At that point, it's possible. Or he could have filed a motion to reopen with the IJ. Because at that point, the only final order that he has to reopen is the one issued by the IJ, and he would have to go before the IJ. You're asking this in a... I don't disagree with you that the board may have remanded it had he raised it to the board or attempted to apply for cancellation. I think you've just answered my question. That's a first. Before it's asked. How do you respond to the two crimes of moral turpitude arguments? He definitely has one. He has one. He didn't raise any argument with respect to... So the second one is a petty theft one for labor. Right. And I think it's a good argument for me because all of these cases are raised within the context of an aggravated felony charge, charge of removability. And so the analysis is whether or not the crime fits within the confines of 110143G, which this court has deemed constitutes theft of property. And so, hence, the distinction between theft of property and theft of labor. Now we're talking about a somewhat nebulous, undefined concept of what involves a crime of moral turpitude, and a crime of moral turpitude is theft. Theft is theft. And in this case, it's theft that rises to the level of a crime involving moral turpitude. Our case law seems to suggest that crimes of theft, whether they're petty theft or grand theft... That's correct. ...are crimes of moral turpitude. Yes. The value doesn't matter. Right. And we've also, and the court has also held that Section 666 in and of itself is not... You look at the offense. Absolutely. Is there anything unique about theft of labor? I am not necessarily... I can't conceive of an example of theft of labor, but in any case, it's theft. You're still... If you can hire somebody and use their services and then not pay them. Right. And it's still morally turpitudinous conduct. He also... Wait a minute. I think I lost a step when I was trying to catch up with you here. We were... Section 666 is the 484A underpinning we held in Corona Sanchez does not fit the generic definition of theft. Within the confines of 1101.43g. Okay. Which is the aggravated felony definition. Which is aggravated felony. You're saying it's still theft for purposes of moral turpitude. It's a very... It's a different analysis. It's more visceral than in terms of a modified categorical approach. And the government's position is you don't even get to modify... Well, you can't get... Well, our case law, if I remember correctly, our case law, if the crime, alleged crime, moral turpitude is too broad, encompasses too much conduct, then you do need the modified categorical. I believe that's correct. We're dealing here with a very specific offense, petty theft of labor charges and misdemeanor. As a principle, no less, not as an accessory after the fact. Right. So if he has suffered a conviction, two crimes of moral turpitude, what does that... does that preclude him from getting cancellation of removal? It doesn't preclude him from ultimately getting cancellation of removal. But in the end, that's ultimately a discretionary determination. So that's where it factors in. Right. It'll also factor in, in this case, because the government's position is that he's abandoned the cancellation relief. He would have to file a motion to reopen before the board. And then we'd have to establish eligibility for cancellation. But if the board would just remand the matter back to the IJ and say, let him apply for cancellation of removal, the government would come back and say, well, you know, he may be superficially eligible for cancellation, but he can't show moral, that he meets the good moral character requirement. Yes. He is a legal permanent resident, and I think the good moral character... Doesn't apply. ...analysis applies within the confines of the judge's ultimate discretionary determination. Yes, that's right. As an eligibility hurdle, he'd have the... he'd have to show that he's not been convicted by a preponderance of the evidence of an aggravated felony. Okay. If the judges have no more questions, I think the... Judge Robart had it hit the nail on the head. His CAT claims and his withholding claims based on a particular social group falls far short of his burden. He has to demonstrate more likely than not. And there's really just no substance there. In fact, the only thing that we have is counsel's assertion that there's some form of government acquiescence within the confines of a CAT analysis with respect to Colombian drug cartels. And that simply can't form the basis of a... I'm not sure I'm following the argument. Are you conceding that he has established a social group? No, absolutely not. I didn't think so. Okay. Absolutely not. The matter is essentially foreclosed by a matter of CA and in conjunction with this court's opinion in Ochoa, which was cited in the government's brief. The board has spoken on this issue and there's really no substance to that claim. All right. Thank you. Thank you. Your Honor, very quickly. First and foremost, Judge Baez, there is no good moral character requirement in regards to the cancellation of all applications for legal residence. For legal residence? How about when it gets to the point of exercising discretion? You know, there's a BIA case called Matter of CBT that essentially directs an immigration judge to essentially balance all the positive factors in an alien case versus the negative factors and then just reach a determination whether a discretionary grant is warranted. So when he does that balancing, he can say, well, over here he has all the good things that he's done and over here he's got these two prior... Essentially. Two petty theft convictions. There are crimes of moral turpitude. Versus his 40 years of legal residence, his work history and all of that, Your Honor, family ties. I would also just direct the court's attention to page 9 of the administrative record, which is our BIA brief. We do specifically raise the issue that he would be eligible for cancellation or removal assuming that he's not an aggravated felon. There is no such thing as filing a motion to reopen with the immigration judge once a timely appeal is filed with the BIA. So I would have to respectfully disagree with the respondent regarding that intention. But that's BIA, though, to remand it back down to the BIA. Which we did, Your Honor. In our BIA brief, we do argue to the BIA that they should remand it back. And one final point that I did not mention is just simply that in regards to the crime of moral turpitude issue, we also raise an alternative argument, which is that even assuming that the court finds that both of those convictions are crimes of moral turpitude, there still remains the fact that he could not have been sentenced to more than one year. It doesn't make any difference if it's two or more. Okay. Thank you very much. Thank you. We appreciate the arguments of both counsel. It's good to have competent counsel arguing on these cases. Thank you. All right. The case argued is submitted, and we'll move to the final case on calendar today, which is United States v. Morales-Morales.
judges: Fisher, Paez, Robart